IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRAEDEN F.,
     Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,
     Defendant.

CIVIL ACTION NO.
1:25-cv-2-LMM-CMS

## FINAL REPORT AND RECOMMENDATION

On March 6, 2022, Plaintiff Braeden F. ("Plaintiff") protectively filed an application under Title II for a period of disability and disability insurance benefits and an application for Title XVI supplemental security income, both alleging disability beginning on Plaintiff's date of birth, October 23, 1996. [Tr. 174–75].[1] Plaintiff's applications were denied initially on August 16, 2023, and upon reconsideration on February 19, 2024. [Tr. 61–75, 76–99]. Plaintiff then filed a written request for a hearing on April 17, 2024. [Tr. 130]. Following an administrative hearing held on September 9, 2024, via telephone, Plaintiff's applications were denied by Administrative Law Judge ("ALJ") Laurie Bedell on

---

[1] The Social Security transcript is located at Docket Entry 6 and is comprised of more than 600 pages. The index can be found at Docket Entry 6-1. In citing to the transcript, I will use the numbers referenced in the index that are printed on the lower right-hand corner of each page.

October 9, 2024.  [Tr. 8–30, 31–47].  On November 11, 2024, Plaintiff requested review of the ALJ's decision by the Appeals Council, including with his request for review a substantive brief and vocational report.  [Tr. 172–73, 399–411].  The Appeals Council denied Plaintiff's request for review in an order dated November 22, 2024, making the ALJ's decision the final decision of the Commissioner.  [Tr. 1–7].  Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Plaintiff raises the following three issues in this appeal:

- Whether ALJ's assessment of medical opinions was based upon substantial evidence;

- Whether substantial evidence supports the ALJ's determination that there are a significant number of jobs that Plaintiff can perform; and

- Whether it was an error of law for the Appeals Council not to remand the case in light of new and material evidence submitted with the request for review.

For the reasons that follow, I will recommend that the Commissioner's decision be reversed.

I.      <u>**STANDARD FOR DETERMINING DISABILITY**</u>

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities that are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. *Id.* § 423(d)(2)-(3).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the initial burden of establishing the existence of a "disability" by demonstrating that she is unable to perform her former type of work.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  Once the claimant has met this burden, the burden shifts to the Commissioner to show that, considering the claimant's age, education, work experience, and impairment(s), there are some other types of jobs that exist in the

national economy that the claimant can perform. *Id.* at 1278 n.2. The ultimate burden, however, rests upon the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy. *Id.* at 1278.

## II.    <u>FIVE-STEP EVALUATION PROCESS</u>

Under the regulations promulgated by the Commissioner, a reviewer must follow a five-step sequential analysis when evaluating a disability claim. 20 C.F.R. §§ 404.1520(a), 416.920(a). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ makes her determination or decision and does not move on to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ cannot find that the claimant is disabled or not disabled at a step, the ALJ moves on to the next step. *Id.* The regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)).

The five-step sequential evaluation process is as follows:

1.    The ALJ first determines whether the claimant is currently working; if so, the claim is denied.

2.    The ALJ determines solely on the basis of the medical evidence whether the claimed impairment is severe; if it is not, the claim is denied.

4

3.   The ALJ decides, again, only using medical evidence, whether the impairment equals or exceeds in severity certain impairments described in the Commissioner's Listing of Impairments; if it does, the claimant is automatically entitled to disability benefits.

4.   The ALJ considers whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work; if so, the claim is denied.

5.   The ALJ decides, on the basis of the claimant's age, education, work experience, and RFC, whether the claimant can perform any other gainful and substantial work within the economy. If the claimant is able to do other work, the ALJ finds that the claimant is not disabled. If the claimant cannot make an adjustment to other work and meets the duration requirement, the ALJ will find that the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In this case, the Commissioner, adopting the findings of the ALJ, denied disability benefits at step five. [Tr. 25–26]. The Commissioner found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including laundry worker, garment sorter, and table worker. [*Id.* at 25].

## III.   FACTS

### A.   Plaintiff's Background and Medical History

Plaintiff was twenty-seven years old at the time of the ALJ's decision. [Tr. 26, 174]. According to Plaintiff's Disability Report, Plaintiff completed high school and last worked in 2021. [Tr. 291–92]. Plaintiff alleged disability

5

beginning on the date of his birth due to anxiety, depression, neurodevelopmental disorder, hypotonia coordination disorder, attention deficit hyperactivity disorder, and a sensory integration disorder.  [Tr. 176, 186, 291].

In the first of his two Function Reports, Plaintiff stated: "I have had learning disabilities that make everything hard.  This makes me very depressed and anxious to the point of not being able to do anything on my own."  [Tr. 315].  In the second Function Report, which Plaintiff completed at the time he requested reconsideration, Plaintiff stated: "My learning disability and short[-]term memory create depression and anxiety that affect every part of my life."  [Tr. 356]. Notwithstanding the foregoing, Plaintiff stated in both Function Reports that he prepared simple meals, spent time with others, and occasionally shopped in stores. [Tr. 317–19, 358–60].

As relevant to this appeal, Plaintiff was examined twice by a disability mental health consultative examiner, Dr. Daniel McDonald, Ph.D.  [Tr. 577–82, 603–07].  The first examination occurred in May 2023, and the second occurred in February 2024.  I will discuss these examinations and Dr. McDonald's medical opinions in my discussion of the issues raised by Plaintiff on appeal.

B.    **Administrative Hearing Testimony**

At the administrative hearing before the ALJ, Plaintiff testified that he had previously been employed at seven or eight different jobs that friends helped him to obtain, but he would get yelled at and pushed out of the way at work because he performed badly and was not working fast enough.    [Tr. 36, 39–40, 42]. According to Plaintiff, this resulted in him having anxiety attacks, getting dizzy, and feeling like he would pass out.  [Tr. 36].  Plaintiff testified that every time he got in trouble at work, he would just be quiet and keep his opinions to himself. [Tr. 38].  He testified that he missed work often due to his anxiety, depression, and lack of desire to live or do anything.  [*Id.*].  Plaintiff testified that he would shut down and quit before he got fired.  [Tr. 39].

Plaintiff testified that he had a driver's license but did not drive much because he would get dizzy and anxious when he drove.  [Tr. 36].  He typically would ask a family member to drive him where he desired to go.  [Tr. 36, 40]. Plaintiff testified that there was never a time that he went out of the house by himself.  [Tr. 41].

Plaintiff testified that he enjoyed cooking with his mom, doing laundry with his mom's assistance, playing video games, and tending to his dog, including walking his dog up the street for dog playdates and occasionally taking the dog to

7

the dog park.  [Tr. 37–38, 40].  When he went to the dog park, he would just stick by himself and walk around.  [Tr. 41].

Dr. James R. Newton, a vocational expert, classified Plaintiff's past work as that of a fast-food worker.  [Tr. 43].  He testified that an individual with Plaintiff's limitations would not be able to perform Plaintiff's past work but could perform other work in the national economy, including such jobs as laundry worker, garment sorter, and table worker.  [Tr. 43–44].  He explained that while the garment sorter and table worker jobs are production worker jobs that involve producing a product, the jobs do not require that a certain number of products be created within a certain timeframe.  [Tr. 44–46].

The vocational expert further testified that if the hypothetical individual required positive supervision with minimal criticism when given supervision or redirection, there would not be work in the national economy that the hypothetical individual could perform.  [Tr. 44].  The vocational expert testified that such an individual would be more suited for sheltered employment.  [*Id.*].

## IV.   <u>FINDINGS OF THE ALJ</u>

Following the administrative hearing, the ALJ issued her decision, making the following findings:

- Plaintiff met the insured status requirements of the Social Security Act through September 30, 2021;

- Plaintiff had not engaged in substantial gainful activity since October 23,1996, the alleged onset date;

- Plaintiff had the following severe impairments: low average to borderline intellectual functioning; attention deficit hyperactivity disorder; anxiety; depression; and asthma;

- Plaintiff's obesity was a non-severe impairment;

- Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff may have no more than moderate exposure to pulmonary irritants; he can understand, remember, and carry out simple instructions; he can use judgment to make simple work-related decisions; he is limited to occasional interactions with supervisors, coworkers, and the public; and he can perform tasks that do not involve a production rate pace;

- Plaintiff was unable to perform any past relevant work;

9

- Considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including laundry worker, garment sorter, and table worker;

- Accordingly, Plaintiff had not been under a disability, as defined in the Social Security Act, from October 23, 1996, through the date of the decision.

[Tr. 13–26].

## V.   **STANDARD OF REVIEW**

This court's role in reviewing the factual determination of the Commissioner is limited.  *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986).  In reviewing the Commissioner's decision, the court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court's only role is to determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982).  The Supreme Court has interpreted the substantial evidence standard and concluded that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

"Substantial evidence" means such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Substantial evidence is more than a scintilla but less than a preponderance. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, substantial evidence is not present if the ALJ "does not have before him sufficient facts on which to make an informed decision." *Ford v. Sec'y of Health & Hum. Servs.*, 659 F.2d 66, 69 (5th Cir. 1981). Failure to apply the correct legal standards or to provide the reviewing court with a sufficient basis on which to determine that the correct legal principles have been followed—or that substantial evidence exists—mandates a reversal. *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## VI.   **DISCUSSION**

Plaintiff asks the Court to reverse and remand the ALJ's decision. Plaintiff asserts three claims of error. Because I resolve the first claim of error in Plaintiff's favor, I do not address the latter two.

### A.   **Whether the ALJ's Assessment of Medical Opinions was Based Upon Substantial Evidence**

Plaintiff argues that substantial evidence does not support the ALJ's assessment of the medical opinions of Dr. Daniel McDonald, Ph.D. and that substantial evidence consequently does not support the ALJ's RFC determination

11

or the determination that Plaintiff could perform the jobs identified by the vocational expert. [Doc. 7 at 7]. For the reasons below, I agree.

In determining a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.920(a)(1). The ALJ must consider the medical opinions in conjunction with all the other evidence of record and must consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e); *see Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC").

ALJs no longer are required to give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical findings, including those from the claimant's own medical sources and/or treating physician. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, ALJs must now focus on the persuasiveness of the medical opinion using the following five factors:

1. Supportability
2. Consistency

    3.      Relationship with the claimant (which includes)
         a.      Length of the treatment relationship
         b.      Frequency of examinations
         c.      Purpose of the treatment relationship
         d.      Extent of the treatment relationship
         e.      Examining relationship
    4.      Specialization
    5.      Other factors

20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

ALJs must explain how they considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The controlling regulation provides some guidance to ALJs on the "supportability" and "consistency" factors. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). "Supportability" is a measure of how much a medical opinion is supported by objective medical evidence and explanations provided by the medical source giving the opinion. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" is a measure of how consistent the medical opinion is with evidence from other sources (medical and nonmedical). *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Opinions that have a high degree of "supportability" and "consistency" should be treated as more persuasive. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). Under the revised regulations, the ALJ may, but is not required to, explain how he or she

considered the other remaining factors, unless the ALJ finds that two or more medical opinions about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). The ALJ will consider one or more medical opinions or prior administrative medical findings from the same medical source together using the above factors, and the ALJ is not required to articulate how he or she considered each opinion or finding. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

An ALJ "is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Dicks v. Colvin*, No. 3:15-cv-934, 2016 WL 4927637, at *4 (M.D. Fla. Sept. 16, 2016) (citation and quotation omitted). "It is not enough to discover a piece of evidence which supports [a] decision, but to disregard other contrary evidence[,]" and a decision is not supported where it was reached "by focusing upon one aspect of the evidence and ignoring other parts of the record." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). At the same time, in challenging an ALJ's decision, a claimant must do more than point to evidence in the record that supports his allegations. *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). He must show the absence of substantial evidence supporting the ALJ's decision. *Id.* Hence, even if the

evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021).

Here, the ALJ noted in her decision that Plaintiff underwent two consultative psychological examinations conducted by Dr. McDonald. [Tr. 22]. The decision states: "The consultative examiner opined that both in May 2023, and again in February 2024, the claimant was found to put forth very little effort in the tasks he was asked to do for assessment of his abilities and limitation." [*Id.*]. The ALJ found that "despite the claimant's lack of effort, the consultative examiner was able to still determine that the claimant is capable of understanding, remembering and carrying out simple instructions; might have mild occasional difficulty relating to coworkers and supervisors; and that he exhibited mild difficulty in focus[ing] and sustain[ing] attention to complete the mental status examination." [*Id.*]. The ALJ found these limitations to be persuasive, noting that they were generally consistent with Plaintiff's activities of daily living and the overall evidence of record and that they were supported by Dr. McDonald's consultative examination notes. [*Id.*].

Plaintiff asserts that the ALJ's decision correctly reflects the consultative examiner's assessment of Plaintiff's effort during the May 2023 examination.

15

[Doc. 7 at 9].    Indeed, in Dr. McDonald's report following the May 2023 examination, Dr. McDonald stated: "This evaluation is of limited validity in that claimant put forth very little effort especially during the clinical interview where he was quick to respond to questions with don't know." [Tr. 581].  Dr. McDonald nevertheless diagnosed Plaintiff with borderline intellectual functioning, opined that Plaintiff had "average ability to understand and remember simple as well as multi-step instructions[2][,]" and further opined that Plaintiff had some "mild social anxiety, but should be capable of relating with coworkers, supervisors, and the public."  [Tr. 581–82].  Dr. McDonald likewise opined that Plaintiff had "mild difficulties to sustain attention to complete tasks" and "mild difficulty managing day-to-day stressors."  [Tr. 582].

With respect to the February 2024 examination, Dr. McDonald wrote that Plaintiff "was cooperative during evaluation." [Tr. 604].  Dr. McDonald no longer diagnosed Plaintiff with borderline intellectual functioning but diagnosed him with generalized anxiety disorder and major depressive disorder, moderate severity, recurrent.  [Tr. 605].  Dr. McDonald further noted that Plaintiff's "cognitive mental status examination was consistent with average ability to understand and remember

---

[2] Dr. McDonald stated that more detailed or complex instructions may cause Plaintiff to have mild problems.  [Tr. 581].

single and two-step instructions." [*Id.*].  Dr. McDonald found Plaintiff to "exhibit mild deficit in social and communication skills," perhaps causing him to "have mild occasional difficulty relating with coworkers, supervisors, and the public." [*Id.*].  Dr. McDonald also observed that Plaintiff had mild difficulty in focusing and sustaining attention to complete tasks during the examination.  [*Id.*].

Having reviewed the ALJ's decision and Dr. McDonald's reports, it appears that the decision does not accurately reflect what Dr. McDonald conveyed in his four-page report following the February 2024 examination.  The ALJ stated that "[t]he consultative examiner opined that both in May 2023, *and again in February 2024*, the claimant was found to put forth very little effort in the tasks he was asked to do for assessment of his abilities and limitation."  [Tr. 22 (emphasis added)].  This is not correct as to the February 2024 examination; Dr. McDonald indicated that Plaintiff cooperated during this examination.  [Tr. 604].  Dr. McDonald did not make any comment or offer any opinion regarding any lack of effort by Plaintiff.[3]  *See generally* [Tr. 603–06].

---

[3] Notably, the Commissioner even concedes: "During the examination, Plaintiff appeared to give better effort, including the ability to perform simple calculations."  [Doc. 9 at 8 (citing Tr. 604–05)].

This discrepancy regarding Plaintiff's effort during the February 2024 examination may not have had any impact whatsoever on the ALJ's assessment of Dr. McDonald's opinions or on the ALJ's RFC determination, but the discrepancy raises a question regarding the ALJ's review of Dr. McDonald's February 2024 report. Significantly, that report included Dr. McDonald's opinion that Plaintiff's "cognitive mental status examination was consistent with average ability to understand and remember single and two-step instructions." [Tr. 605]. The ALJ did not discuss this opinion at all in her decision, but the RFC determination instead provided that "[t]he claimant can understand, remember, and carry out simple instructions." [Tr. 16]. As other courts have recognized, "[t]he distinction between 'understanding and carrying out simple 1 or 2-step instructions' and 'understanding, remembering, and carrying out simple tasks and instructions in a routine work environment' can matter in terms of the representative jobs a claimant like Plaintiff can do." *T.J.G. v. Comm'r of Soc. Sec.*, No. 5:24-cv-398-CHW, 2025 WL 3270202, at *5 (M.D. Ga. Nov. 24, 2025); *cf. Stella H. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-145-RGV, 2022 WL 16706714, at *11 (N.D. Ga. Jan. 28, 2022) ("Courts in other circuits have found reversible error where the ALJ gave great or significant weight to an opinion that the claimant was capable of following one- and two-step instructions but assessed an RFC that only

limited the claimant to simple, routine tasks."). A limitation to one-to-two-step instructions, "if supported, would go to the length of the instructions instead of the complexity, and thus implicate jobs requiring level one reasoning."[4] *T.J.G.*, 2025 WL 3270202, at *5.

Of course, as the Commissioner argues, the ALJ is not required to adopt every limitation in an opinion that the ALJ finds persuasive. *See Julie H. v. Comm'r Soc. Sec. Admin.*, No. 1:21-cv-1442-RDC, 2022 WL 16706716, at *4 (N.D. Ga. Sept. 16, 2022). Moreover, as I stated above, the ALJ is not required to articulate how she considered each opinion or finding offered by a medical source. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). But because the ALJ's decision raises a question regarding whether the ALJ properly considered Dr. McDonald's February 2024 report and accurately assessed his opinions, I am unable to find that the ALJ's evaluation of the opinions in that report and the ALJ's RFC determination are supported by substantial evidence.

---

[4] Plaintiff emphasizes that while all unskilled work is deemed to be simple, a limitation to only one-to-two-step work is consistent only with unskilled jobs that have a General Educational Development reasoning level of one. [Doc. 7 at 10]. Yet, the three jobs that the vocational expert testified Plaintiff could perform, and that the ALJ found Plaintiff could perform, are incompatible with jobs limited to only one to two steps. [*Id.*]. Thus, if the ALJ did not properly consider Dr. McDonald's opinion that Plaintiff had average ability to understand and remember single and two-step instructions, this would not be harmless error.

**B.     Consideration of Plaintiff's Remaining Arguments on Remand**

Because this case is due to be remanded for the reason discussed above, I do not find it necessary, at this stage of the review process, to address Plaintiff's other arguments.  The ALJ, however, should consider those arguments on remand.  *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (requiring ALJ to reassess the entire record on remand); *Salamina v. Colvin*, No. 8:12-cv-1985-T-23TGW, 2013 WL 2352204, at *4 (M.D. Fla. May 29, 2013) (stating that, in view of the remand, it was unnecessary to address the plaintiff's other contentions).

## VII.  CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Commissioner's decision be **REVERSED** under sentence four of 42 U.S.C. § 405(g), and that the case be **REMANDED** to the Commissioner for additional proceedings not inconsistent with this Order.

I **DIRECT** the Clerk to terminate the referral of this civil action to me.

**SO REPORTED AND RECOMMENDED**, this 7th day of April, 2026.

Catherine M. Salinas
United States Magistrate Judge

20